on behalf of the county of San Diego, also the appellant in this case. I would like to reserve six minutes. Okay. To be successful on a post-trial motion for as a matter of, sorry, to be successful on a post-trial motion for judgment as a matter of law, one must find that no reasonable jury could have concluded the way they did. In this case, a reasonable jury could and did find no constitutional violation occurred when a social worker interviewed a child at a public school during the course of a child welfare investigation. Let me ask you this. Okay. So you had a jury trial and you won, but then the court set aside the verdict and then the court also, I guess in the alternative, said it would grant a new trial if that wasn't upheld or something along those lines? That's correct. Okay. So are there any allegations of instructional error here? There are allegations, not specifically, but as it was... Well, did either side say that the jury didn't get the right instructions? I believe there was an objection to the instruction on reasonableness. The question that you were just asked by Judge Callahan is different. Sometimes an appeal says the judge told the jury this and he should have told them that. And that's a pretty easy, straightforward question. Is such an instructional error claimed on appeal? Not specifically. Okay. Are we on the same track? Yes. I just wanted to know that because how that would relate to me as well is, all right, so you were stating the standard if the judge sets aside a jury verdict, but also if a judge grants a new trial, that's a different standard, correct? I believe the standard is that it has to be against the clear weight of the evidence. It has to be what? Against the clear weight of the evidence, as opposed to substantial evidence supporting the jury's verdict. The motion for a new trial, conditionally, the standard is that the evidence, it was the court's decision was against the clear weight of the evidence. But we review that. I'm confused about which one we're talking about here, but we review the conditional grant of a new trial for abuse of discretion, correct? That's correct. Okay. So let's just say hypothetically, I'm not saying this is, hypothetically that I agree with you that the court should not have set aside the verdict. All right. But then I go to the next area on the grant of the new trial. If the judge just doesn't agree, you know, how do you evaluate that from the, the judge clearly thought that no one could have come to that conclusion, that it was wrong as a matter of law. But let's say I don't agree with that. But then I get to the next step. If I say, well, it wasn't, you know, there is a way that the jury could have come to that. But then when I look at granting a new trial, how am I supposed to look at that? Did the judge use another standard there? Did the judge just say, I just, I don't see how anyone could have come to this conclusion? So I think this might answer your question. When the court, the district court granted the issue as a matter of law, it conditionally granted a new trial if for some reason this court were to vacate that order or disagree. So if you agree with the underlying trial court and the jury that that finding by the jury should remain, there is no need for a new trial. Because that was just a conditional grant. If you disagreed. Well, it was kind of, I don't think, but there are different standards there. So that's what I'm trying to figure out here. They aren't, that's what we call double-barreling something. It's sort of like saying, well, I don't think there's any error. But even if there was error, it was harmless error. They're saying, like, I don't think as a matter of law that they could have come to that. But let's just say the appellate court doesn't agree with me. Then I'm looking at it and it would seem that we review that for abuse of discretion. So that's a little bit different. I think in either standard there is substantial evidence and more than substantial evidence to support the jury's verdict. Let me ask you what's concretely on my mind so you can educate me and correct me if I'm mistaken. My thinking is the jury had at least some evidence for its determination that the girl was free to go and didn't have to answer questions at the interview and stay in the interview room until the social worker let her go. However, the idea that a 9-year-old girl would feel free to go just because the social worker says you're free to go, a 9-year-old mentally disabled girl, seems really remote. So I'm thinking judgment as a matter of law, that's a stretch because there was some ridiculous evidence that if the jury believed it, they could go on. But new trial, yeah, it really is hard to see how the weight of the evidence sustains the idea that this little girl felt free to go. Tell me what I'm missing here in terms of what the focus of the case is, what the pivot point is, and how to look at it. So all the evidence was presented in a six-day trial about this entire case and about this child and about this family. And the jury sat through all of that evidence, weighed credibility. So far you're just giving me fluff. Focus on my question. So the question is, I can understand how just thinking, is a 9-year-old child free to leave, can be a troubling thought. I can understand that because a 9 is a gray area. She's mentally disabled, right? Well, I don't – I'm going to take issue with the word mentally disabled. The evidence in the record is that she had ADHD. And autism, it sounded like. The possible autism, somewhere on the spectrum. That means bad concentration, maybe even a little nuts in terms of understanding social relations. I'm not sure if the evidence suggests that. That's what it means. I'm sorry? That's what it means, ADHD and a little bit of autism, maybe. Autism spectrum? Not necessarily. I think in this case all we have are those two words, ADHD, possible autism spectrum. But we have much more evidence about this child. That she is smart beyond her years. That she is intelligent. That she says what she says. None of those are inconsistent with ADHD and mild autism. But nothing is showing anywhere that ADHD would cause someone to not feel free to leave. Or not to speak their mind. Or not to say, no, you know what, I don't want to interview with you. Or I'm done with this. Oh, sure. ADHD could mean she doesn't pay attention well in class. And she doesn't pay attention well to what the social worker says to her. I don't think there's any evidence in the record that she was not paying attention to the social worker. Or that she didn't have any. There is evidence. Well, you can infer it from ADHD. I mean, that's why they give the kids Riddle in it. So they'll sit and listen in class. But I also think that's a factual determination that the jury was able to hear. And the jury was able to weigh how did her ADHD possibly impact her ability to leave. And all that evidence was presented and I'm sure discussed back in jury deliberations. And so I'm not sure what more evidence or what the plaintiffs would say would be brought in a new trial to help flesh out this issue. You know, the circumstantial evidence is permissible. Inferences are permissible for both the judge in taking his view and the jury taking its view. But on any post-trial motion, the evidence has to be looked and construed in the most favorable light to the non-moving party. And that's the defendant in this case. Can you give examples of cases where district court's decision to grant a new trial has been reversed on appeal for abuse of discretion? Because it seems to be one of the more unfettered discretionary acts that a district court judge has. I can't give you specific examples. I can say it's rare that a jury would make a decision and then the district court would overturn that on a post-trial motion. Well, there's difference. There's overturning it, which Judge Callahan has addressed. And then there's just granting a new trial. And I think we're looking at, at least my question is, in granting a new trial, can you give an example where a court of appeals has reversed the district court's grant of a new trial? Not to the judgment as a matter of law. I think we found cases like that. But for just granting a new trial, is this just an unfettered discretion that the district court has in any case? I don't think so. I think they have to show, I think the plaintiffs would have had to show that the evidence was against the clear weight of the jury's verdict. Well, I guess what I'm thinking your argument is that the judge did not agree with the jury after hearing all of that. So, but then the judge said, okay, as a matter of law, I don't think that there's any evidence. You're arguing there is evidence, and so that's why that was a wrong legal conclusion. What else is there? And did the judge just not like the result? And the judge would have decided it differently. And is that enough to grant a new trial, if you would have decided it differently? So I don't think it's enough just to not like the result. I think that, I don't want to say anything about the district judge, but I do think the characterization that this judge did not like this result is clear through the record leading up to the verdict itself. Well, I'm just trying to figure out what was different, what was the different reason that he granted a new trial than that he granted the judgment as a matter of law. And I'm having a hard time finding that in the record. And I don't mean to interrupt the question, except that it supplements. My understanding was that the law, that the rules require you to conditionally grant a new trial before you do a judgment as a matter of law. Meaning he, and maybe you could address this, maybe I'm wrong about this, but could the district court have granted judgment as a matter of law without conditionally granting a new trial? I believe so. Okay. And I believe that for what he had entered into his order, he did not give any additional reasons as to why he would conditionally grant a new trial. It was almost like a footnote at the end of the order. And that he just said that the evidence was not against the clear weight of the evidence and the standard itself is that it's not outside the range of the evidence presented. So if you look at all of the evidence that was presented, there's no need to grant a new trial either. There's nothing out there that is going to come in and change the outcome because the evidence that was presented in front of the jury where they had the opportunity to look at all the evidence came to the conclusion that neither the mother or the child's rights were violated. Is the factual issue whether the girl was in fact free to leave or whether she was detained for that five-minute interview? Yes, that is correct. And the question on new trial is whether it's against the clear weight of the evidence to conclude that she was free to go and knew it. I'm sorry, I think I missed your question. Okay. As I understand it, for the district judge to have exercised his discretion to grant a motion for new trial, he would have to have concluded reasonably that it was against the clear weight of the evidence for the jury to conclude that the girl was free to go and not submit to the five-minute interview by the social worker at the school and that she knew she was free to go. That's correct. Is that all correct? That's correct. Okay, thanks. I have a question. How many jurors were there? I believe there were six jurors. Was it a unanimous verdict? A unanimous verdict. Does it have to be on a civil case? Yes, it does. Because you had less than 12? That's correct. And say we felt like there did need to be a new trial, obviously the district court granted a new trial before the CAP decision came down from this court. Is it possible that we could say we're going to say there was no abuse of discretion as to the Fourth Amendment claim, but CAP changes that analysis on the Fourteenth Amendment claim and therefore we're going to reverse the district court as to the grant of a new trial on the Fourteenth Amendment claim? Or would the analysis go the same on both claims? So I think what you're trying to say is what the defendants in this case have said all along, that there's no Fourteenth Amendment claim for the parent as it relates to a school interview because there's no causation. There's no deprivation of familial custody during that five-minute interview of the child at a public school. But how would we do that procedurally? Are we reaching out? We're effectively granting a judgment as a matter of law or a summary judgment on that standard, it seems like. So on the summary judgment phase in this case, that argument was made, and the district court disagreed with that argument and allowed that claim to proceed. So now that CAP has intervened, I think this court does have the power just if that would be the case. We could effectively reverse the district court on the denial of summary judgment on the Fourteenth Amendment claim. That's correct. And also because that issue was also litigated and then argued again in this appeal as well. So I don't believe that there would be any prejudice to the plaintiffs in that situation. But getting back to the new trial, I just don't see that there's evidence sufficient to warrant a new trial, that there was substantial evidence at the time given to the jury. The plaintiffs had the burden at the trial phase to bring forth whatever evidence they would like. I'm missing this argument. I have trouble understanding what you mean by evidence, I guess. I'm thinking one piece of evidence that was in there was that the girl was nine. Another piece of evidence that was in there was that the girl arguably had ADHD. And another piece of evidence was in there that she arguably was on the autism spectrum. And jurors, all of them, were once nine. And many of them have had nine-year-old children. They know what nine-year-olds are like. They can draw reasonable inferences based on their own experience. That's how we instruct them. So I don't see why there was no evidence. It seems like there was evidence that you have a little girl called down to the principal's office or whichever office she was called down to because some adults want to ask her some questions. And the whole issue is, does she feel free to blow them off, or does she feel like she has to submit? The additional evidence that was presented at trial, which the jury was able to consider, was the testimony from the social worker that in her experience that she had many children, both older and younger than age nine, who did blow her off, who did refuse. The jury could decide they didn't believe a word she said. After all, she's being sued. I understand, but the jury also has to weigh the credibility of all the witnesses, and this Court needs to give deference to the jury's deliberations and credibility determinations because that's what the law … You could just draw their inferences and conclude that the social worker was so biased by her own interest in the outcome that she's not worthy of belief. I just don't understand what the problem is. Well, they could, but the jury didn't. But the jury didn't. But the judge could think a reasonable jury would have. The fact that it was a unanimous jury verdict on all counts after a six-day trial where the jury was instructed that there is not a viable … That's a great argument for the JMOL. I mean, there was some evidence to support the jury's verdict. You can't say there was no evidence, and therefore you can't say that no reasonable jury would have reached that conclusion. That's a great argument for the JMOL argument you're making, but I don't see how it makes the case for the new trial issue. Did the jury see the child? No. The jury didn't see the child. Well, so the parents talked about the child. Both parents. The social worker talked about the child. What other evidence was there about the child? The social worker testified about the child, the mother, the father, the biological father. There was information from the stepfather who testified as well, and then the written documentation, the written documentation evidence in the court record where the social worker had talked to other collaterals. For example, the social worker talked to the child's teacher, and that was written documentation in the court record that the jury was able to view. What did the teacher say? The teacher said that she was doing well in class, that she was getting better or progressing in terms of her behaviors, but didn't have anything outstanding to say that she was disabled or not functioning at that point. Do you want to save the balance of your time? Just one more sentence. I think it's more than some evidence. I think there's plenty of evidence for the jury to make all of these determinations, and plus they were given instruction with about eight or nine factors. Only one factor would relate to the child's developmental disability, if you want to call that, ADHD. The other factors were the child's age, whether the social worker told her she was free to leave, whether there was any show of authority or threats. And all of those things combined, I think that this court should keep the jury's verdict intact, and I will reserve the rest of my time today. Thank you. Thank you, Your Honors. Donnie Cox for the plaintiffs. May it please the court. You're going to use all the time, right? I'm going to use all my time. Okay. Thank you, Your Honor. So let me start with the factors that we know that caused Judge Benitez to grant the JMLL. First of all, this little girl had watched her mother argue with this social worker on the night of, I think it was February 8th, about the initial interview that happened 19 days after this one, or 19 days before this one, in which her mother said, we'd like to have an attorney present if you're going to do this interview. And under the threat of removing the children, the mother actually relented and allowed the social worker to interview the child. So the child knew that this social worker had power. She also saw that this social worker had excluded her stepfather from the home that she lived in. It was this social worker that did that. Can I ask a question about that? Does the social worker have that authority? Because my sense is that they don't, and when this went to the court,  That is the problem, Your Honor. Part of the problem is that the family court system and the juvenile court system in California work on separate tracks. And the juvenile court system has complete authority over what happens in the family court. The juvenile court, if there's a petition filed in the juvenile court, the juvenile court can overturn the family court's decision. And so what happened in this particular case was the social worker excluded the father. And then went to court, very much like CAP, and said, this is wrong. And the family court allowed the father to come back. But this is an interesting question. Do you believe any 14th Amendment claim survives CAP? Absolutely. Why? First of all, if you read CAP, and I've got it right here in front of me, the basis for the plaintiff's 14th Amendment claim is the same as the First Amendment retaliation claim. The 14th Amendment claim that they talked about in CAP had nothing to do with the school. It had to do with the retaliation claim before. No, I understand that, but it says specifically, plaintiffs do not allege that CAP actually lost custody of his children as a result of defendants' alleged misconduct. It seems to set a standard that you have to lose custody in order to have a 14th Amendment claim. And then it goes on to quote the Woodroom v. Woodward County case and says, due process must be afforded prior to a termination of parental status. Your Honor. Is your position, part of, and let me ask the question this way before you answer, because all of what you just preceded about the argument on the, or what happened on February 8th, I don't see that in your complaint. Your complaint seems to focus upon the letter that, I don't know what the letter meant. Apparently it was erroneous, even as the county would argue, that suggested that there was going to be a termination of rights. But it doesn't, you don't seem to focus on prior threats that happened February 8th. Well, no, Your Honor. We're not making, I'm talking about what the little girl knew at the time that this second interview took place and why she was. Oh, so you're saying that supports your 4th Amendment claim. Okay, so what I want to know is why a 14th Amendment claim comes here, because I don't see a termination and I don't see an allegation of a termination. A termination is not required for a 14th Amendment substantive due process claim. I can give you one great example that happened in this court about a year ago right now. Mann v. County. I've read Mann. And Mann, there wasn't a termination of the parental rights that resulted in that case. It was the undue, the physical examination without parental consent, court order, or execution. Well, but that seems far different, right? I mean, that was a gynecological exam of a young female without parental consent. And that seems far different than a five-minute interview here, no matter what you're talking about. Your Honor, it really doesn't matter the length of the interview. Well, it matters what they're doing. I mean, you can either have a termination of parental rights or you can have assuming Mann was correctly decided, which we must. It seems like a different style of 14th Amendment claim. Well, it's not just Mann. It's also Green v. Camaretta. It's also Wallace v. Spencer. And every case that revolves around, and if I could, I would like to. So just going back to that, you think this termination language. So what do we do with Kapp? Well, with Kapp, first of all, I think the termination language, if you look at the note that is the comment for 9.32 of the jury instruction for parental rights, it says that the interference substantive due process typically arises when a state official removes a child from the home, typically. It's not just, that's not the only time that it arises. You can have a substantive due process. But Kapp seems to say it is. That's my problem. And I guess you would try and cabin Kapp and say it's only First Amendment retaliation. That's all they were talking about at that point. Again, what they're talking about with regard to the 14th Amendment claim in that instance is that Mr. Kapp didn't lose custody of his child as a result of what the social worker did when she temporarily took away his custody. Right. All she did. But that seems far more applicable in this case than the Mann case does. Well, it actually is not in that. In this case, what the social worker did is much more applicable with regard to the interview, is much more applicable to Mann. That's not even a serious argument, is it? Of course it is, Your Honor. In Mann, they did an invasive physical exam. Your Honor, it's all about the Fourth Amendment. Is there a seizure? And if there's a seizure, then is it reasonable under the circumstance? So you think any Fourth Amendment violation as to a child automatically leads to a 14th Amendment substantive due process right for a parent? I think if it interferes with the right of the parent to make decisions for their child, yes. I mean, the parent makes all kinds of decisions for their children. Parents make decisions about what kind of television people watch, their kids watch, where they go to school, who their friends are, who they talk to. And if that's the case, doesn't it follow that a parent has a right to make a determination whether or not a child talks to a social worker? Well, but parents also do things to their children, and they don't take good care of their children. And all of us that have been around know that sometimes children are left in situations if children can't necessarily always advocate for it. They can't get a job and get out of the house. So there is a need for social workers in terms of parents that are not doing what they're supposed to do. It's a question of where you cross the line. I agree with you completely, Your Honor. And if at the time of this second interview LG had been suspected of being abused or neglected, I would agree she wasn't. That's the point. Let me get back to the JMOL because I don't understand why a reasonable jury couldn't conclude that the girl was not seized, she was told she was free to go, and would understand that she was free to go. I'm not saying that that's the weight of the evidence. I'm just talking about JMOL right now, that judgment is a matter of law under the no reasonable jury standard. I don't understand how you even have a shot at holding that up. Well, Your Honor, I think that what Judge Benitez did, he watched this trial. He watched the evidence come in and he listened to the evidence. That's the same as your opponent's argument. I understand. The jury heard a lot and this is a big deal. But what we heard in this case was a little girl who knew the power of the social worker, and if we're talking about the seizure now, the issue of the seizure. Wait, understand, I'm asking about no reasonable jury. And in a whole line of cases, gosh, I guess I wrote one many years ago, where the jury's decision seemed kind of ridiculous, but there was some evidence for it, so it sticks and that's what the precedents say. Well, Your Honor, if the court is of the opinion that the JMOL is inappropriate here, I would suggest that a new trial absolutely is. Well, then that's where I'm struggling if we get past that. I'm struggling with the fact you both got a jury trial, it was six days long, and I'm not seeing, there's no allegations of instructional error. Everyone put on the evidence that they had, and six people, you know, even though we like to think that as judges we're smarter, we can do better credibility than everyone else, there's a reason we have jury trials. And sometimes jurors are actually better at this than lawyers and PhDs and all of that. They heard everything. You all threw everything in the kitchen sink, and they rolled for the county. So that's, I could say, you know, you would have been better off, obviously, having a court trial in front of this judge, because then if that was on appeal, then that would be unassailable, because the judge would have made those factual findings that were put before the jury. But here, the jury heard everything, there wasn't instructional error. What's a new trial going to accomplish? Your Honor, I think that one of the things that happened here is that Judge Benitez struggled with whether to put this in front of the jury in the first place, whether or not this was a question of law as opposed to a question of fact. And you can read through the transcript, and you can see that throughout the transcript. He actually said on at least two occasions that, you know, he thought this was a question that wouldn't go to the jury. And that's the whole idea. Well, but that's not correct, is it? I mean, it's a mix. At a minimum, the Fourth Amendment claim, well, it depends on which part you're talking about, but seizure is a mixed question of fact. I wouldn't agree, Your Honor. I think that there's no question that this was a seizure. And, you know, the question that the – I thought there was a question that that was, in fact, the question. Well, in our minds, Your Honor, and the way we look at this, you know, we know that a seizure can be a very temporary thing. Look, you know, my study of the record in this case, tell me if I'm off base. What I suspect happened here is jury nullification. The jury thought that it was so ridiculous to characterize asking a little girl about possible sex abuse in her family, to characterize that as a constitutional violation, and without some much more egregious case than you had, they were just not going to do it, and they didn't care what the law said about it being a seizure. It didn't seem like a seizure to them. That's my guess as to what happened. That may very well have been what happened. And I'm wondering if there's any point in interfering with that sort of jury nullification. Well, of course there is, Your Honor, because jury nullification is not appropriate. I mean, under the circumstances, jury has to follow the law. And in this particular case. Well, and under the law, the jury, if they get the right instructions, are presumed to have followed the instructions and followed the law. And so that's, you know, I'm just wondering in terms of there's many times I would not do this. Well, I'm not saying many times, but there are times that there are instances in, say, the Superior Court, for example, where the judge is asked to sit as the 13th juror. And that would be like in a capital case. After a jury comes back with a death verdict, you sit as the 13th juror, and if you don't think that there was evidence that supported the death verdict, you can set that aside. But here, it's like it's just one of those, they heard everything. And, well, if you get a new trial, no one's ever going to do things exactly the same because you lost. And if you do it exactly the same, that would be kind of, that would be the definition of insanity. But that being said, you can't, neither side can really fabricate evidence. The evidence is what it is. And I don't see what, so then if we get six more people that say the same thing, are then we going to say those six people, they're crazy too? Well, Your Honor, one of the things that happened in this trial is there were some serious questions about Ms. McCann's credibility. The court called it to their attention. But isn't that specifically for the jury to decide? Your Honor, I think that what happened was is that some of this, some of these questions arose not in front of the jury. And they arose when, you know, Ms. McCann changed her testimony. When she changed her testimony? Why wouldn't it? I'm sorry. Oh, you were finished. Well, I just asked, when did she change her testimony? Initially, she said that she had not gone out to do an investigatory interview. She was simply going out to, you know, say goodbye to the girls and, you know, that sort of thing. You mean when she went to the school? When she went to the school, I'm sorry. And so, because that's what we're talking about here, the school interview. I apologize. And then, and she also said that at one point the little girl, she didn't ask the little girl if mom, if dad had taken a picture of her. The little girl just blurted it out. Well, I'm confused by that whole thing because she had already interviewed Elle two weeks prior and Elle had said this never happened. So, I'm confused as to why there even was a need for a second interview. And that's the problem, Your Honor. But is it a problem? I mean. Your Honor, the county has a policy, and this is all about the county's policy. The county has a policy that allows social workers to interview children, any child that's in the home, as long as they have an open investigation, regardless of whether that child is suspected of being abused or not. Well, but the thing is that people that have worked in this field know as well that children don't always, I mean, they feel a lot of pressure about saying things against their parents. They, talking about the type of things that you have to talk about. There can be cases where children give, they don't admit something right away, as far as that goes. And the social workers do have a different function. There can be cases where you don't charge someone with a crime, but there's clearly problems that are happening in the home that a child needs to be protected from. And it just, they're not always one and the same. Your Honor, at no point was this child ever suspected of being abused or neglected in this investigation. Well, I don't think that's a fair statement. We have a father who admitted to taking naked photos of his 12-year-old daughter. Right. So I don't know how you could suspect that, or how you could say that there was never a suspicion at any point that some of the other daughters might have. Well, and that isn't, that isn't like Parenting 101. That is not considered, you could float that to a lot of different people, and they would probably say, is it a good idea for dad to take photos of, and then I think that there was things about documenting puberty as they go through. I think that there could be. It was a completely dumb idea. And, you know, I don't sit here. Well, and they don't have, and they have their children still, as far as that goes. Help me with how we're supposed to review this. It seems to me the question for the trial judge was, is it against the clear weight of the evidence for the jury to conclude that the child was not seized? And I can see where there was plenty of evidence that she was not seized, and there was also evidence from which you could conclude that she was seized. You could go either way. The judge thought the clear weight of the evidence was that she was seized. I'm pretty sympathetic to the notion that she was seized because, jeez, I remember nine. I know nine-year-olds, grandchildren. They're going to do what they're told. And the girl had already seen the tremendous power and authority this social worker had in the home, as you say. But what concerns me is, am I getting too deep into the facts there? Because I'm just supposed to look at whether the district judge abused his discretion in deciding that the jury's verdict was against the clear weight of the evidence. And that is so limiting. I'm wondering whether there's anything to do but grant the new trial. It would be helpful if you had some cases that were somewhat similar with regard to a motion for new trial, where they go your way or don't. Well, Your Honor, experience Hendricks versus Hendricks licensing to Jimi Hendricks case. Well, any time we can bring up Jimi Hendricks, that's good. The footnote 16 says, circuit judges. You know, I realize something, too. You have cross appeals here. Technically, it's all the same type of thing. So technically, I guess, if you want to reserve a little time. Would like to, Your Honor. Then you can do that, too. I would like to. So that it's a little confusing when you have two cross appeals. I appreciate that, Your Honor. And I would like to reserve just a little. But in that Hendricks case, it says, circuit judges reading the dry pages of the record do not experience the tenor of testimony at trial. Disbelief of testimony by a trial judge is a basis for new trial. And I think that it's absolutely logical for this court to look at the record and say, we decided. This judge looked at the tenor of the testimony at trial and decided. You have to treat that social worker as lying to cover herself. Correct. And the question about whether this is a five-minute interview is also questionable. Is it questionable? Because I was looking for that. I haven't seen any dispute over whether it was five minutes. The problem, Your Honor, is that we do have a very tenuous 9-year-old who is. Well, did she ever say that it was more than five minutes? Well, she never testified. She went into the administration office. Did anybody else say that she was in there for more than five minutes? We didn't have that testimony at trial. Oh, I mean, I think it's unfair to say that it was disputed then. Well, I think that the court is. I'm not sure if it's disputed. I'm saying that I think the trial judge has some questions about Ms. McCann's credibility in this case. Based on. But is that. I mean, see, this is what. So is there any limit to when we can grant, when we could overturn or when we could reverse. The problem I have with what you're saying here is any litigant could come in here and make these same arguments. So is there a limit? Where's the outer limit where we could say the district court abused its discretion? Because clearly there must be some time when a district court abuses its discretion. I'm sure there are, Your Honor. And this is not one of those cases. I think the district court felt strongly enough that it thought that this case deserved a jail. Is that a basis to say that it was against the clear weight of the evidence? Because there was no other evidence that contradicted Ms. McCann. But he just didn't think that she was being accurate about the five minutes that she spent with her. Well, Your Honor, I'm. I mean, that's what I heard you are your argument. Yeah, it's in this particular case. I think it's certainly Ms. McCann's credibility weighed into the judge's decision. And even though it weighed into the decision, I don't think that's why he granted the JMOL. Doesn't he need to explain why? What do you think? Do I think that he. You said you don't think that's why he granted the JMOL. The reason I think he granted the JMOL is because he struggled with the issue of whether or not he should have sent this to the jury in the first place. I see. And he. Well, he hoped the jury would do what he did. He was. And then you don't have to do that. But by the same token, sometimes I think Judge Kleinfeld sort of touched on this. I don't think I know kids better than six jurors know kids a lot of times or better than you know kids or better than it's. I'm an actual expert in raising children, Your Honor. I don't have any. So that makes me a complete expert. I will tell you. Yeah, you can't be impeached. I will tell you. With your bad parenting. That's right. But I will tell you that I think that Judge Benitez looked at this case and said this is wrong. And, you know, the evidence shows this little girl was seized. It showed that it was seized as a result of the county's policy of allowing social order. Unfettered act. Is there any question that making a little girl submit to an interview about her parents and sex for five minutes is a violation of the Fourth Amendment? I don't think there is, Your Honor. Okay. Your time's up. But I'm going to give you one minute for rebuttal on the cross appeal. It gets a little unwieldy when we have appeals and cross appeals, but I'll try to without going back and forth forever again. But go ahead. So just to touch on a few couple points. So going back to the 14th Amendment, I think CAP is instructive for two reasons. First, the family court letter, which is the cross appeal, the motion for summary judgment, that there is no interference with the familial custody or deprivation. Is there a 14th Amendment claim based on anything other than this letter? No. Okay. Except for the trial issue, which was our issue in terms of the mother's interview, is also a 14th Amendment claim. So two 14th Amendment claims, one for the family court letter and one for the mother's presumed or alleged damages for the school interview. But CAP is instructive on both because of the same reason that there was no deprivation in family custody. It did not change anything. No family custody has been changed since, and so therefore there's no causation under the 14th Amendment. So that CAP instruction or that CAP opinion can be used for both reasons and for the reasons that Judge Nelson explained in terms of citing just being under an investigation is not a cognizable claim under the 14th Amendment. There has to be some sort of deprivation. And whereas plaintiff's counsel did say that typically in the instructions it has to be a removal, we have been saying all along in all of our briefings since the beginning that it has to be an actual deprivation, that a child sitting in an interview for five minutes is not that deprivation. Can you address the Monell issue for me? Sure. The Monell issue is that the jury never reached that issue because it found no constitutional violation. So if you look back at the jury forms, if they find there was no underlying constitutional violation for the child or for the mother, they did not need to go on to the second and third or third and fourth question about Monell liability. So they found that there was no violation, so they were not then instructed to answer those questions, and they did not. Judge Benitez answered it, obviously, in his JMLL. But given Judge Kleinfeld's worry about this case is that the jury was given all of that information, and Judge Benitez did not explain how or why there should be a new trial after six days of evidence, and the evidence was what it was. Elle did not testify, but there was an abundance of evidence about Elle. There was evidence about her ADHD, but they did not present evidence as to how ADHD by an expert, per se, would show that a child would not feel free to leave. They had that ability to do so, but they did not. Is it clear under the law that it is, in fact, a Fourth Amendment violation if a child is compelled to submit to a five-minute interference in their freedom to go and made to answer questions? No. That's a factual determination under the totality of the circumstances. Well, there's a factual determination to be made about whether the girl was, in fact, compelled to submit to an interview in the principal's office. But I'm asking a legal question. Is there a question under the law that if that occurred, that it would be a Fourth Amendment violation? Or that it would be a seizure. Or that it would be a seizure. So if a child did not feel free to leave, then, yes, that would be a seizure. That's element number one. The second element is reasonableness. Was that seizure justified? That's where you get into is there a warrant, is there special exigency, all those things. That's correct. But the seizure issue is purely a factual determination. And a little girl is capable of being the victim of a seizure in a five-minute interview in the principal's office? I guess so. But that did not happen here. Look, I'm not talking about facts with you now. I want to find out about law, whether the law is in effect there. Legally, it could be, if that's what we gave the right law, and they felt that she didn't feel she was free to leave, she could be capable of a seizure, right? Exactly. And I would say a person of any age. So whether it was a nine-year-old. I'm not asking about anybody else. I'm just trying to find out the law in this case so that I know whether we have to look at the law or the facts or both or neither. So I think for the purposes of determining whether that child was seized, you look at the facts. And you give the deference to the jury who weighed credibility and the determinations and followed, presumably, the jury instructions that laid out the eight factors to consider as to whether or not Elle felt free to leave during that interview. The same factors that were given in the first issue in the trial court, which is not on appeal. So there was the same jury instruction about that as well. So that would be what this court would consider. Okay. Thank you for your comments. Thank you, Your Honors. With regard to our cross-appeal, the issue of that letter that was sent to the court, it was absolutely false. It was completely. Everybody's admitted that. I mean, that's not really helpful because everybody has said that it was wrong. So the only question was, what were the damages? No. The question is, is that a 14th Amendment violation? And under CAP, it doesn't seem to be. Well, no, Your Honor. Under CAP, the question was, did what happened in CAP shock the conscience? And the question in CAP. The district court. Here's the problem I have. We've got a county that's doing the best they can. Her testimony was, we sent out this letter. I couldn't have changed it if I wanted to. She may have been lying. I don't know. That turns that into a 14th Amendment violation because they sent a wrong letter that a district court judge didn't even rely on and immediately gave the rights back to the parents. Your Honor, that letter sits in the file today. The county refuses to take it out of the file. That's the problem. The problem that we have is that it has never been removed. And it sits like a time bomb in the family law file waiting for another dispute between Ms. Dees and her ex-husband. Well, that's a different argument than what you've been raising. That's interesting. That's in our arguments in our papers, Your Honor. And it's certainly in our reply. That's the problem. The problem is that that thing sits there like a time bomb. And we didn't even find out about this letter until my clients didn't find out about this letter until discovery in this case when we got the documents from the county because that letter goes into a secret file in the family court because it comes from the juvenile court system. So the problem for us in this case is that it's still there. And it is a time bomb. And I would like to also point out that both the county and Mr. Kapp have asked the court for extended time to file for re-hearing and re-hearing and bonk on that case on issues such as shock to conscience and other issues. But I just, for our purposes in this case, we think that at the very least there should be a new trial. I didn't quite get what you were just saying here. Excuse me? Petitions for re-hearing on bonk. We haven't even made a decision yet. No, no, no. I'm talking about Kapp.  And Kapp. Oh, okay. Both the county and Mr. Kapp. Okay. I was going to say we haven't even made a decision yet and you're already preparing your petition for re-hearing on bonk. No, no. I'm not going to preach. Okay. All right. Sorry. Sorry, Your Honor. But, you know, I think that one of the reasons we are here today is because of Calabretta. And one of the reasons the counties go to school to do these interviews rather than doing them at home is because Calabretta said that they could not invade the privacy of the home in order to do the kinds of things they did in this case. Now, I'll grant you there was a strip search in that case. Okay. Well, we're kind of, we're, I've given you extra time, both of you. So I think that will, unless either of my colleagues have additional questions, that will conclude the argument. Thank you both for your helpful argument in this case. And this matter will stand submitted.
judges: Kleinfeld, Callahan, Nelson